IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT
HOT SPRINGS DIVISION

SUMMER PARRISH                                                                                          PLAINTIFF

VS.                                          CASE NO. 06-6024

HOT SPRING COUNTY, et al.,                                                                      DEFENDANTS

### PLAINTIFF'S BRIEF IN SUPPORT OF HER RESPONSE TO MOTION FOR SUMMARY JUDGMENT

FACTUAL BACKGROUND

Defendant Ball, Sheriff of Hot Spring County, Arkansas, in clear violation of state law requiring a psychological examination and a complete background check, created a danger to the citizens, including the Plaintiff in this case by placing a deputy on the street without complying with Arkansas law and further, without any training to be a deputy sheriff.  That deputy, Defendant Fite, after having contact with the Plaintiff's ex-husband, arrested her and took her to the Hot Spring County Jail where he had her expose her breasts at which time he also fondled them.  This was done to coerce her so he could violate her bodily integrity under the bribe of allowing her to be released from jail without having to post bond.

Defendant Fite was placed in a position by the policies of the Sheriff to arrest the Plaintiff and take her to the county jail when he should not to have even been allowed to have authority to arrest at the time he sexually assaulted the Plaintiff.

THE HIRING DECISION WAS A CAUSE FOR VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS

There are facts in this case which support a finding that Sheriff Ball made a conscience decision not to give a psychological examination to Defendant Fite, and instead allowed him to act as a deputy sheriff in Hot Spring County. The Arkansas Commission on Law Enforcement Standards and Training requires that before a person is allowed to act and take valid law enforcement actions, that an F-1 form be done. (See Exhibit 5) In this case, the F-1 form (Exhibit 3 to Polk's deposition) shows that one of the things to be done is a psychological examination. Even Defendant Ball admitted that the purpose of a psychological examination was to ensure that someone was not given a badge and gun that is not psychologically fit for the job. (Ex. 1, p. 21) Defendant Ball admitted no psychological examination of Defendant Fite was done. (Exhibit 1, p. 12)

In this case, we have a clear violation of state employment regulations by Sheriff Ball that was a direct cause of Defendant Fite being able to violate the Plaintiff's constitutional rights. Exhibit 4 from the Arkansas Commission on Law Enforcement Standards and Training shows that prior to working as a police officer, Minimum Standard regulation 1002-5 requires that an offer of employment, if any, be made contingent upon successful completion of a physical examination and a psychological examination. (Ex. 4) Specification 7 of the Commission requires a person be examined by an individual licensed to practice psychiatry or psychology and qualified to perform such evaluations in the state of Arkansas, who after examination finds the officer to be competent and recommends the agency to hire the individual. (Ex. 7) Clearly, even the plain language of 5-7 Procedures 2 indicates that the hiring of the individuals should only occur *after* he has been examined by a

licensed psychiatrist or psychologist who recommends hiring. In this case, Sheriff Ball chose to totally ignore these regulations in violation of state law in hiring Defendant Fite.

Mr. Polk has made clear in his testimony that a person had to be examined by a psychiatrist or psychologist prior to being allowed to conduct law enforcement business. As Mr. Polk stated, "You want to know if the person is mentally unbalanced to the best of your ability. The psychological profile along with the interview, you use all those tools, you use the background investigation, you use the psychological, you use the interview, to determine whether this person is fit to be a law enforcement officer." (Exhibit 2, page 62)

When Mr. Polk was asked, "Do you feel like Sheriff Ball's actions or inactions in this case contributed to the assault and battery that occurred of Summer Parrish?" Mr. Polk candidly responded, "I do. I think by not doing the things I mentioned he put Fite in a position to be able to do what he did. Now if he would have done a thorough background, if he had done a psychological, if he would have done those things there is a possibility that Fite would not have been hired. So, it did contribute. I think it did contribute." (Ex. 2, p. 65, line 21 through p. 66, line 5) Skipper Polk testified in his opinion a number of inadequacies existed other than lack of training that led to Ms. Parrish's assault by Defendant Fite. Mr. Polk testified as follows:

Q: To your knowledge, do you criticize Sheriff Ball in the conducting of the personal interview or lack of conducting a personal interview in the hiring of Fite?
A: Yes. I - - the personal interview that was conducted, apparently, based on the deposition, which is the only record that I had to review, indicated a very short interview with no in-depth discussions, especially in regards to his past history. If you look at

standard -- where is our F-1 again? The F-1 that we've talked about. I may have put mine into evidence.

Q: It is.

A: If you look at Page 2 of the F-1, (f) -- 32(f) (i) of -- I'm sorry, (h), it asks, has it been interviewed by personnel of this department and found to be suitable for an appointment as a law enforcement officer, and then it has a section, department interview. The board is made up of, whomever the board was made up of. And -- and did they recommend hiring and firing. There is just -- there is no indication that any of the requirements was met as far as background interviews.

Q: Does a check at the Commission on Law Enforcement Standards and Training reveal any type of file whatsoever on Deputy Fite in connection with his employment at the Hot Springs County Sheriff's Office?

A: No, sir.

Q: Okay. Either as a jailer or as a deputy sheriff?

A: No, sir.

Q: Okay. And should, in your opinion, there be a file on Deputy Fite?

A: Yes, sir.

Q: Okay. And do you criticize Sheriff Ball because of that?

A: Yes, sir. As the manager or the sheriff of the department, he was responsible for insuring that the requirements of the commission was followed, as well as his own. And there is absolutely no evidence that it was complied with.

Q: What is the -- under specification F-6 for personal interview, what is the requirement?

A: That an applicant will be personally interviewed prior to employment by the department head or his representative.

Q: Okay. And does this also apply to promotions?

A: Yes, sir.

Q: And do you know of any time Sheriff Ball interviewed Deputy Fite before he put him on the street with weaponry and police equipment?

A: There is no documentation of an interview being conducted.

Q: Okay. You were asked about specification F-7, I believe. And it's your opinion that the psychiatric or psychological exam must take place before a person is issued a weapon. Is that right?

A: Yes, sir.

Q: And before a person is allowed to conduct law enforcement business in an individual manner?

A: Yes, sir.

Q: Okay. Why?

A: You simply -- you -- you want to know if a person is mentally unbalanced to the best of your ability. The psychological profile along with the interview, you use all those tools. You use the background investigation, you use the psychological, you use the interview to determine whether this person is fit to be a law enforcement officer.

Q: Okay. Did alarms go off, for lack of a better word, when you read Sheriff Ball's deposition and he admitted knowing that Mr. Fite had been arrested and charged with criminal offenses in the past?

A: Yes, sir.

Q:  And -- and why so?

A:  I -- I started looking then, and once I got the documentation, through Fite's file for some sort of evidence that someone had looked into those matters to find out the circumstances, find out the circumstances of the not guilty, for whatever reason it was, to -- to go back and interview the victim to find out what they said happened.

Q:  Okay. Are -- are the standards of the State of Arkansas, as well as the policies and procedures of the Hot Springs County Sheriff's Office, to protect the citizenry of the state and county against persons in authority that should not be in authority?

A:  Yes.

Q:  Were those followed in this case?

A:  No.

Q:  In your report you state, "When a department head, especially a small department such as Hot Springs County Sheriff's Office, hires a person to be a jailer and absolutely -- with absolutely no documentation required to prove his fitness to perform duties, such as a background investigation, I believe it demonstrates a complete lack of understanding of management's responsibility to the public." Is that what you stated?

A:  That is what I stated.

Q:  Would that also apply to putting a person behind the wheel of a law enforcement vehicle and in full regalia that applies to a law enforcement officer or deputy sheriff?

A:  Oh, I think it's even more multiplied then.

Q:  Okay. And if you would, expand on how that demonstrates a lack of understanding of management's responsibilities?

A:     I think, and I'm going to refer to our, because I was a manager of police for a good while. I think it's incumbent upon us to put the best people we can put on the street and do our best to assure that the public will receive fair and impartial treatment, not be mistreated, people's rights not be violated, and that everyone be treated in an equal manner. In order to do this, the state has created certain requirements, which is state law. And -- and it's -- it's certainly a reasonable expectation to think that we can follow simple rules in order to do our best to protect the public. You go out of your way and you create -- 9 you create a policy manual that requires certain things, but yet you don't follow your own policy manual. I mean why do you even bother creating it? It looks good. If someone from the press or the public comes in and says do you have a policy manual, let me have a copy of it, sure, here it is, and you read a policy manual, that's impressive. You read the standards set out by the commission, and they are impressive standards. But if we don't follow our own rules, and the standards are our own rules, they are the rules that govern law enforcement officers, then -- then I think we're doing the public, management is doing the public a great disservice. I think it's wrong not to at least do the basic things. And the F-1, the requirements on the F-1 are very simple. There is nothing on that form that's difficult to do.

       If you don't have a lot of manpower, you -- you just have to -- you've got to have somebody take a little time and go back and do a background. I -- I don't say you go back and you do a background to the day they were born. I say you go back and do a background that's reasonable to the position for which they are applying.

       You had two incidents in this case where -- where Fite was involved in the criminal justice system. At the very least, those incidents should have been looked into, and his conduct subsequent to that, to see if there was anything else. I -- you asked the question if

he's ever done this before. I have no idea. Nobody does, because there wasn't a background done.

Is he prone to doing it again? Who knows?

Would a psychological positively say yes or no? I -- I have no idea. I -- I know sometimes they can, sometimes they can't, with a certain degree of certainty. Well, I don't believe I misspoke there.

But you take -- it's a tool. You take it, you take the interview, you take the background investigation, you document it, you look at it, and you make a decision. You don't call a person in that's been working for you for three months, have a short conversation, put them on the street for a day and a half and turn them loose. You just don't do that. In good conscience I don't think you can do that." (Ex. 2, P. 60, line 6–p. 65, l. 20)

See also the report submitted by Skipper Polk, exhibit 5 to Polk deposition. (Ex. 2)

This case is distinguishable from the decision of the Eighth Circuit in *Morris v. Crawford County,* 299 F.3d 919 (8th Cir. 2002) in that in that case it was undisputed that the sheriff had looked at the person's background but still chose to hire him and did not disregard and violate any of the State minimum standards for hiring law enforcement officers. The Supreme Court in *Board of Commissioners of Bryan County, OK vs. Brown,* 520 U.S. 397, 412; 117 S.Ct. 1382, 1392 (1997) stated, "Even assuming without deciding that proof of a single incidence of inadequate screening could ever trigger municipal liability, the evidence in this case was insufficient to support a finding, in hiring Burns, Sheriff Moore disregarded a known or obvious risk of injury."  The Court also said, "A plaintiff must demonstrate a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.  Only where

adequate scrutiny of an applicant's background would lead a reasonable policy maker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the officer's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Board of County Comm. Of Bryan Co., OK v. Brown, supra,* 520 U.S. at 411; 117 S.Ct. at 1392.

Arkansas legislature in enacting Arkansas Code Annotated 12-9-101 et seq., concerning the training of law enforcement officers distinctly stated that the General Assembly finds and determines that: (2) "the State has a responsibility to ensure effective law enforcement by establishing <u>minimum selection</u>, <u>training</u>, and educational requirements for law enforcement officers and also to encourage advanced in-service training programs; …"  In this case, Sheriff Ball as shown by the exhibits from Minimum Standards, put someone to work without conducting an adequate background check, which might have been excusable, but clearly deliberate indifference occurs when Sheriff Ball, as a policy maker for law enforcement for Hot Spring County, thumbs his nose at state law and gives no psychological examination, the purpose of which is to protect the public from unstable individuals being given law enforcement authority.

Specification S-7 of the Commission of Law Enforcement Standards and Training attached hereto as Exhibit 7 reads, "Section 1002 (3) (i) of the Regulations requires that applicants be examined for emotional stability by an individual licensed to practice psychiatry or psychology and qualified to perform such evaluations in the state of Arkansas. <u>The emotional stability to withstand the pressures of modern law enforcement work is an essential qualification for applicants for law enforcement service</u> and all those psychological testing and interviews have recognized limitations, many personality defects can and are

identified through screening by trained professionals." (e) requires testing for any impulse control problems, particularly with anger, having resulted in husband/wife or child abuse or revealed in explosive outbreaks.

Also as noted in paragraph 2 of Specification S-7, the results of the evaluation will be recorded.  A reported evaluation will be forwarded to the employing agency.  The report will be signed by a licensed psychologist or psychiatrist designating the applicant as recommended or not recommended.

In this case, Sheriff Ball did not comply with State law, so in this case it is not like the facts in *Board of Commissioners of Bryan Co, OK v. Brown, supra*, 520 U.S. at 406; 117 S.Ct. at 1389, where "Sheriff Moore's hiring decision was itself legal, …"  In this case, Sheriff Ball's hiring decision was not legal since there had been no psychological examination done.  This case therefore is not identical to the decision of the Supreme Court in *Board of Commissioners of Bryan Co, OK v. Brown, id.*  The Plaintiff contends that this is much more akin to the decision of the Supreme Court in *Pembaur v. Cincinnati,* 475 U.S. 469, 480; 106 S.Ct. 1292, 1298 (1985) where the Court said, "…[I]t is plain that municipal liability may be imposed for a single decision by municipal policy makers under appropriate circumstances." This case is clearly one when the evidence is viewed in a light most favorable to the Plaintiff, shows that Sheriff Ball in his official position as sheriff and policy maker on law enforcement matters for Hot Spring County, decided to put to work someone who did not meet the requirements of Arkansas law to act as a police officer since he had not been given a psychological examination prior to going to work on the streets as a law enforcement deputy.

## LIABILITY FOR FAILURE TO TRAIN

In this case the Defendant attempts to argue that there was no liability because there is no showing he possessed knowledge of the specific lack of training that led to the violation in this case.  In his deposition, Defendant Fite stated that he knew that the acts he did might violate Sheriff's Office policy, but he did not think he committed any criminal acts, and learned otherwise only when questioned by the Arkansas State Police.  (Ex. 3, pp. 37-38)  The Sheriff put him to work without any training in Arkansas criminal law.  Further, Arkansas Code Annotated 12-9-114 requires training as part of the basic police training course, which Defendant Ball did not have Defendant Fite participate in, such as training in the laws concerning sexual assault.  A.C.A. 12-9-114 (b) (2).  As Skipper Polk testified, this lack of training was clearly improper to have someone ride with another individual for less than 2 days (Ex. 2 pp. 60-61) and then turn him loose on the street with a gun, a badge, and power of arrest, not knowing that causing a prisoner to strip and touching her breast as done by Fite in this case was not illegal, is clearly deliberate indifference to sufficient training.  According to Fite, he rode with another deputy for two days before he was allowed to be on his own. (Ex. 3, p. 22)  Fite worked as a deputy sheriff from 3/14/03 until 6/13/03. (Ex. 3, p. 25)

As the Supreme Court pointed out in *City of Canton v. Harris,* 489 U.S. 378, 392; 109 S.Ct. 1197, 1206 (1989), "Consequently, while claims such as the respondent's – alleging that the City's failure to provide training to municipal employees resulted in the positional deprivation she suffered – are cognizable under Section 1983, they can only yield liability against a municipality where that City's failure to train reflects deliberate indifference to the

constitutional rights of its inhabitants." The Supreme Court stated, "It is plain that municipal liability may be imposed for a single decision by municipal policy makers under appropriate circumstances." *Pembaur v. City of Cincinnati, supra,* 475 U.S. 480, 106 S.Ct. at 1298.

In this case, Defendant Ball showed a deliberate indifference to the injuries that could be caused by an individual who was placed on the street with authority to arrest and detain people that had not been psychologically examined as required by state law, did not know that he was even committing a crime when he sexually assaulted the Plaintiff and had only 2 days of training, and had never been given any formal training by the Sheriff's office as far as dealing with arrestees (Ex. 3, p. 39). Fite doesn't remember even reading any policies of the Hot Spring County Sheriff's Department. (Ex. 3, p. 47) Clearly it would be reasonable for a jury to find that a person who caused a female to strip and allow him to touch her breast as a condition of her not having to post a bond, had such a perverted personality that it would have been discovered on the psychological examination that is required under Arkansas minimum standards.

There was clearly deliberate indifference to the constitutional rights of individuals in Hot Spring County by turning loose an individual such as Mr. Fite without following state law, which was clearly enacted to protect the public from rogue police officers. In adopting statute concerning the Commission and advisory board on standards and training, the Arkansas General Assembly said that, "The state has a responsibility to ensure effective law enforcement by establishing minimum selection training, and education requirements for law enforcement officers." Arkansas Code Annotated 12-9-101 (2). Additionally, this

Court can take judicial notice of the rules and regulations of the Commission under Arkansas law.  See *Mitchell v. State,* 298 Ark. 536 (1989).

The Eighth Circuit in *Krein v. Norris,* 309 F.3d 487, 491-492 (2002), the Court in describing deliberate indifference stated,

> "In *Farmer v. Brennan,* 511 U.S. at 828, 114 S.Ct. 1970, the Supreme Court held that '[a] prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment.' The Supreme Court further explained that such deliberate indifference exists if 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' *Id.* at 837, 114 S.Ct. 1970. The Supreme Court also made clear in *Farmer v. Brennan, id.* at 843, 114 S.Ct. 1970, that, in order to have a viable deliberate indifference claim, a plaintiff is *not* required to allege and prove that the defendant or defendants specifically knew about or anticipated the precise source of the harm (in this case, Michael Pruett). The Court explained: 'Nor may a prison official escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault.' *Id.* (Footnote omitted).

This Court should find that Sheriff Ball, in being deliberately indifferent in following state law created a risk that he acknowledged he knew the purpose of the act was to prevent mentally unstable people from carrying a gun.  See Exhibit 1, page 21.  The Court should therefore allow this case to go to the jury for them to conclude whether the actions of Sheriff Ball result in liability.

In addition to not doing the psychological, it is clear as explained by Mr. Polk, that there was a total failure to do a background check which aggravates the situation here.  The Sheriff did not do a personal interview with Defendant Fite, nor did he explore the circumstances on the background of the criminal charges that Fite had had against him. There is clearly a substantial likelihood and almost a certainty, that if a proper background

coupled with a psychological evaluation had been done, this individual never would have been allowed to be a police officer.

The expert witness, Mr. Polk, clearly explained the need for training prior to allowing someone to act as a police officer.

When asked how much training a person should have before they are released to the general public, Skipper Polk replied,

"Well, the - - the standards require a hundred hours of training for an auxiliary law enforcement officer, and that is a person who works for free, subject to the direct supervision of a certified law enforcement officer.  So I would say that at a very minimum he needs - - a person who is starting out in that law enforcement career needs at least that amount of training before he is released to go out on the street.

Q:    Are you critical of Sheriff Ball's training of Deputy Fite before he released him to be by himself as a law enforcement officer on the street?

A:    Yes, sir.  There is a complete absence of training.  There is nothing in the records that indicate that he received any law enforcement training.  He rode with a deputy for a day and - - well, supposed to be two days, he rode for a day and a half, and the other deputy apparently, according to depositions, went to his house, unloaded, and told Deputy Fite the car was his and he was done.  So Fite, from that point forward, based on the documentation, was by his self with, again, no - - no indication of any training whatsoever." (Exhibit 2, pages 56-57.)

In *City of Canton vs. Harris*, 489 U.S. 378, 388; 109 S.Ct. 1197, 1205 (1989) the Court stated, "We hold today that the inadequacy of police training may serve as a basis for

Section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." (Footnote omitted).

Clearly when there was no training that went on for months, there cannot be a greater showing of a failure to train case. This isn't just an inadequacy of training, this is a total lack of training.

### SHERIFF BALL IS NOT ENTITLED TO QUALIFIED IMMUNITY

The law is clearly established that a pre-trial detainee's due process rights are violated when a correctional officer or other officer commits a sexual assault on that inmate. In *Kahle v. Leonard,* 477 F.3d 544, 550-551 (8th Cir.2007) the Court, in denying qualified immunity to a supervisor where a subordinate had sexually assaulted a prisoner,

> "A prison official may be held liable to a detainee if he directly participated in the violation of her constitutional rights or if his failure to train or supervise the offending actor caused the violation. *See Tilson v. Forrest City Police Dep't,* 28 F.3d 802, 806-07 (8th Cir.1994). A failure-to-supervise claim may be maintained only if the official 'demonstrated deliberate indifference or tacit authorization of the offensive acts.' *Liebe v. Norton,* 157 F.3d 574, 579 (8th Cir.1998) (citation and quotations omitted). The deliberate-indifference standard is a subjective one: "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. The official need not believe that serious harm will actually befall an inmate; it is sufficient that the official knows of a substantial risk that the inmate will suffer serious harm. *Id.* at 842, 114 S.Ct. 1970.
> Malone does not dispute that sexual assault is a serious harm. *See id.* at 833, 114 S.Ct. 1970 ('gratuitously allowing the beating or rape of one prisoner by another serves no "legitimate penological objectiv[e]"') (quoting *Hudson v. Palmer,* 468 U.S. 517, 548, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). Thus, if there was a substantial risk that Kahle would suffer that harm, and if Malone was deliberately indifferent to that risk, then Malone can be held liable under § 1983 for violating Kahle's rights under the Fourteenth Amendment (unless Malone enjoys qualified immunity).
> Malone argues that he did not violate Kahle's rights because he was not subjectively aware that she was, in fact, being sexually assaulted. Malone misunderstands the deliberate-indifference standard. To be deliberately indifferent, Malone did not have to know that Kahle was being sexually assaulted, but only that she was at substantial *risk* of being sexually assaulted. The Supreme Court has been clear on this point:
> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.

*Id.* at 842, 114 S.Ct. 1970. This Court has been equally clear:[I]n order to have a viable deliberate indifference claim, a plaintiff is *not* required to allege and prove that the defendant ... specifically knew about or anticipated the precise source of the harm." *Krein,* 309 F.3d at 491.

In this case, Sheriff Ball made deliberate choices on his part.  As the United States District Court for the Eastern District of Arkansas stated in *Hays v. Faulkner Co., Arkansas,* 285 F.Supp.2d. 1132, 1141 (2003),

> "Under Section 1983, '[a] person subjects another to the deprivation of a constitutional right … if he does an affirmative act, or omits to perform an act which he is legally required to do that caused the deprivation of which [the] complaint is made.'  In other words, an official may be personally liable for a constitutional violation of another's rights if an official 'acts or fails to act with deliberate or reckless disregard of the plaintiff's constitutional rights.'"  (Footnotes omitted.)

It is clear that there was a failure to act by Sheriff Ball when he had a legal obligation under Arkansas law to ensure that emotionally stable individuals are the ones given the authority to deprive people of their liberty.   In this case, Defendant Ball chose not to fulfill that obligation.  The law that a person was free from sexual abuse had been clearly established over a decade earlier, if not earlier than that, in *Parrish v. Luckie,* 963 F.2d 201 (8th Cir. 1992) where the Court upheld a judgment against the former North Little Rock police chief in his official capacity for criminal acts of rape done by a patrolman in the course of his duties as a police officer under color of state law.

## CONCLUSION

This Court should find that the actions of Sheriff Ball, as the final policy maker, were so grossly indifferent to the constitutional rights of the citizens, that it was foreseeable that turning a person loose without meeting even a minimal background check, no psychological

examination, and given no training, more likely than not would cause injury to a citizen just as it did to the Plaintiff in this case.

                                    Respectfully submitted:

                                    /s/ Robert A. Newcomb
                                    Robert A. Newcomb, # 73087
                                    Attorney at Law
                                    P.O. Box 149
                                    Little Rock, AR  72203
                                    (501) 372-5577
                                    E-Mail: robertnwcmb@aol.com

## CERTIFICATE OF SERVICE

      I hereby state that a copy of the foregoing was served electronically this 16th day of January 2008, by uploading same to this Court's CM/ECF system, which shall send notification to:
Mr. C. Burt Newell, Attorney at Law, P.O. Box 1620, Hot Springs, AR 71902;
Mr. Louis Loyd, Attorney at Law, 410 Locust St., Malvern, AR 72104
Mr. Ralph Ohm, Attorney at Law, P.O. Box 1558, Hot Springs, AR 71902.

                                    /s/ Robert A. Newcomb
                                    Robert A. Newcomb