IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

SUMMER PARRISH                                              PLAINTIFF

v.                          Case No. 06-6024

HOT SPRING COUNTY;
SHERIFF RON BALL, individually and in his
official capacity as Sheriff of Hot Spring
County, Arkansas;
JOSEPH STEPHEN FITE, individually and in
his official capacity as an officer for
Hot Spring County Sheriff's Department; and
HOT SPRING COUNTY SHERIFF'S DEPARTMENT        DEFENDANTS


MEMORANDUM OPINION AND ORDER

On September 26, 2007, Plaintiff filed a Second Amended
Complaint (Doc. 27) alleging violations of her civil rights
including the unlawful search and seizure of her person,
invasion of her privacy, and violation of her due process of law
as guaranteed by the First, Fourth, and Fifth Amendments to the
United States Constitution. Specifically, the Plaintiff alleges
that on June 11, 2003, Separate Defendant, Joseph Stephen Fite
("Deputy Fite"), a former deputy, violated her rights when he
sexually assaulted her during an arrest and that the Separate
Defendants, Sheriff Ron Ball ("Sheriff Ball"), Hot Spring County
and Hot Spring County Sheriff's Department ("Sheriff's
Department"), violated her rights by hiring Deputy Fite and
failing to train and supervise Deputy Fite and other employees
of the Hot Spring Sheriff's Department.

On December 14, 2007, Separate Defendants Sheriff Ron Ball,

Hot Spring County Sheriff's Department, and Hot Spring County filed a Motion for Summary Judgment (Doc. 31), which is currently pending before the Court, contending that Separate Defendant Hot Spring County Sheriff's Department is not an entity capable of being sued, the claim against Separate Defendant Hot Spring County is redundant, the Plaintiff's claims fail as a matter of law and Separate Defendant Sheriff Ball is entitled to Qualified Immunity. For the reasons set forth herein, the Defendants' motion is **GRANTED** in part and **DENIED** in part.

## A.   Background

Separate Defendant Sheriff Ball was elected Sheriff of Hot Spring County, Arkansas and began the first of three two-year terms on January 1, 2001. (Exhibit A, p.5) Sheriff Ball was the final authority for the management and control of the Sheriff's Department, and was responsible for the hiring, training, and supervision of employees of the Sheriff's Department. Separate Defendant, Deputy Fite, applied for the position of jailer with the Sheriff's Department on December 3, 2002. On his application for employment, Deputy Fite failed to include any information about his arrest and subsequent charge in 1995 with Criminal Trespass and Terroristic Threatening. However, an FBI criminal history report obtained by Sheriff Ball, prior to hiring Deputy Fite, listed this arrest. Deputy Fite failed to

2

disclose his termination from a previous employer. (Second Amended Complaint, par. 7)   Sheriff Ball hired Deputy Fite without performing any background investigation.   Deputy Fite worked full-time as a jailer from December 26, 2002, until March 14, 2003, when he was transferred from the jail to patrol. Defendant Fite was instructed to accompany Deputy Bobby Hubbard ("Deputy Hubbard"), the deputy he was replacing, for two days before assuming duties as a patrol deputy.   There was no other training. (Second Amended Complaint, par. 8)   Deputy Fite was never certified as a law enforcement officer by the Arkansas Law Enforcement Standards, never administered a physical or psychological examination, never required to take an oath of office, and his status as a patrol deputy was never filed with Arkansas Law Enforcement Standards, as required within ten days of becoming a patrol deputy.   Deputy Fite was allowed to transition from the position of jailer to that of a patrol deputy with nothing more than two days in the patrol car of Deputy Hubbard as training.

On or about January 14, 2003, Jason Farr ("Jailer Farr") was hired as a jailer for the Sheriff's Department.   Deputy Fite and Jailer Farr worked together for some two months, prior to Deputy Fite being transferred to patrol.   On or about May 7, 2001, Sheriff Ball hired Brian Bailey ("Corporal Bailey") to work for the Sheriff's Department.   When Bailey was hired, he

3

was a Certified Law Enforcement Officer.  On August 17, 2001,
Sheriff Ball promoted Bailey to the position of Corporal of the
Sheriff's Department. (Second Amended Complaint, par. 9 and 10)
Prior to June 2003, Deputy Fite applied for and accepted a
position with the Arkansas Department of Corrections.  In a
letter of resignation by Deputy Fite, he indicated that his last
day of employment with the Sheriff's Department would be June
13, 2003. (Second Amended Complaint, par. 11)

     In June 2003, the Plaintiff was employed as a clerk for J-
Mart Store in Malvern, Arkansas.  Deputy Fite would patronize
the store on occasions.  In early June 2003, the Plaintiff asked
Deputy Fite for advice about obtaining a restraining order
against her husband.  Deputy Fite informed Plaintiff of the
procedure for obtaining a retraining order.  Deputy Fite later
telephoned the Plaintiff and advised her that the paperwork for
the restraining order was with the Judge who would need to sign
it.  Deputy Fite then asked the Plaintiff if she would have
dinner with him and she declined.  Deputy Fite was later
informed that the Plaintiff had outstanding warrants for
misdemeanor violations, including hot checks and no insurance.
(Second Amended Complaint, par. 12)     On June 11, 2003, Deputy
Fite confirmed the warrants and arrested the Plaintiff at the J-
Mart.  According to the Plaintiff, Deputy Fite told her on the
way to the jail that she would not have gotten into this mess if

4

she had agreed to have dinner with him.  Deputy Fite also told the Plaintiff that he could talk to the Judge and get the charges dropped if she would just go out with him. (Second Amended Complaint, par. 12)

At the jail, Deputy Fite placed Plaintiff in a room in the jail area near the elevator ("elevator room").  Deputy Fite then went to the room equipped with the video and audio monitoring devices and informed Jailer Farr that he was going to cause the Plaintiff to expose her breasts to him, in lieu of paying the warrant fee.  Jailer Farr turned the volume up on his monitor in order to hear the conversation between Deputy Fite and the Plaintiff and attempted to watch on video but was unable to see Plaintiff on the monitor.  Jailer Farr told investigators that he heard Deputy Fite proposition the Plaintiff, but could not see her on the video.   While Deputy Fite filled out his paperwork, the Plaintiff asked to use the restroom.  Deputy Fite accompanied the Plaintiff to an elevator, which they rode down to the restrooms.   According to the Plaintiff, Deputy Fite hugged her in the elevator and told her that everything was going to be okay.  The Plaintiff told Deputy Fite that she did not think it was very funny.  The Plaintiff alleges Deputy Fite then teased her about being searched for drugs.  The Plaintiff responded that she couldn't understand why she would be searched for drugs since she was not arrested for drugs and that a female

5

officer would have to do search her.  The Plaintiff contends that Deputy Fite replied "Yes, but I get to watch." (Second Amended Complaint, par. 13 and 14)

After returning to the elevator room, the Plaintiff was fingerprinted and given an orange uniform to wear. Plaintiff put the orange uniform shirt over her the shirt she was wearing. Deputy Fite informed Plaintiff that she would not have to pay the fines before being released if she would expose her breasts to him.  When Plaintiff did not respond, Deputy Fite told her that she needed to hurry up and make up her mind.  Ultimately, Plaintiff lifted her shirt and exposed her breasts to Deputy Fite, in lieu of paying approximately $800 in costs and going to jail.  While she had her shirt lifted, Deputy Fite touched her breast with his hand.  Plaintiff immediately pulled her shirt down.  Deputy Fite then informed Plaintiff that she would not have to pay the $100 warrant fee if she would pull down her pants and expose her privates to him.  The Plaintiff told Deputy Fite that she would rather pay the warrant fee.  Deputy Fite then left the room to retrieve the Plaintiff's purse.  Deputy Fite drove the Plaintiff back to her place of employment. (Second Amended Complaint, par. 13 and 14)  After completing his shift, Deputy Fite went to the home of Corporal Bailey.  As he and Corporal Bailey drank beer, Deputy Fite told Corporal Bailey about what he had caused the Plaintiff to do at the jail.

6

Initially, Corporal Bailey did not believe Deputy Fite. However, the next day, Corporal Bailey discussed the matter with Jailer Farr and determined that it had in fact occurred. According to Jailer Farr, Corporal Bailey stated to him, "F*** it, Fite is gone anyway." (Second Amended Complaint, par. 15)

Deputy Fite's last day with the Sheriff's Department was June 11, 2003. He started with the Arkansas Department of Corrections on June 13, 2003. Deputy Fite was thereafter charged with Sexual Assault in the Second Degree, a class C felony, against the Plaintiff. Deputy Fite pleaded guilty, pursuant to a plea agreement, and was sentenced to sixty months of probation. At some point prior to June 19, 2003, Chief Deputy Lee Motes learned that the Arkansas State Police was conducting an investigation of Deputy Fite concerning the allegations made by Plaintiff. As a result, an internal investigation was conducted by the Sheriff's Department. During interviews, Jailer Farr and Corporal Bailey confirmed the allegations made by the Plaintiff. The internal affairs investigators recommended that both Jailer Farr and Corporal Bailey be terminated for initially not disclosing certain details, for failing to report the incident, and for not making any attempts to prevent the misconduct of Deputy Fite. However, Sheriff Ball reduced that recommendation to a four day suspension and a ninety day probationary period. (Second Amended

7

Complaint, par. 16 and 17)

**B.    Standard of Review**

    Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The burden of proof is on the moving party to set forth the basis of its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The Court must view all facts and inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574 (1986).  "The non-moving party, however, must still 'present evidence sufficiently supporting the disputed material facts that a reasonable jury could return a verdict in [their] favor.'"  *Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1003-4 (8th Cir. 2005) (quoting *Gregory v. City of Rogers, Ark.*, 976 F.2d 1006, 1010 (8th Cir. 1992)).  Summary judgment is appropriate where a plaintiff fails to present evidence sufficient to create a jury question as to an essential element of his claim.  *Turner v. Honeywell Fed. Manuf. & Tech.*, 336 F.3d 716, (8th Cir. 2003).

**C.    Analysis**

    Defendants contend that the Hot Spring County Sheriff's Department is not an entity capable of being sued and should be dismissed from this suit.  The Eighth Circuit has held that dismissal of a police department is proper in a § 1983 action

8

because a police department is only a "subdivision of the City" and, therefore, not a "jurisdictional [entity] suable as such." *Ketchum v. City of West Memphis,* 974 F.2d 81, 82 (8th Cir. 1992).   This Court agrees and the claim against Separate Defendant Hot Spring County Sheriff's Department is dismissed. Additionally, Defendants request that the claim against Separate Defendant Hot Spring County be dismissed because it is redundant to maintain the suit against Sheriff Ball, a county official in his official capacity, and also the municipality.   A suit against an individual in his official capacity is tantamount to a suit against the county, itself. *Kentucky v. Graham,* 473 U.S. 159 (1985).  Therefore, the claim against Separate Defendant Hot Spring County is dismissed, leaving only Separate Defendants Sheriff Ball and Deputy Fite.

Defendants next contend that there has been no constitutional violation by Sheriff Ball or Hot Spring County, and therefore, the official capacity claim against Sheriff Ball and the claim against Hot Spring County should be dismissed. Specifically, Defendants contend that official capacity liability occurs only when a constitutional injury is caused by a government's policy or custom and that no custom or policy has been shown in this matter to justify such a claim.  A county may be sued directly under 42 U.S.C. § 1983, or through official capacity claims, only where "the action that is alleged to be

9

unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the county's] officers." *Kuha v. City of Minnetonka*, 365 F.3d 590, 603-604 (8th Cir. 2003).  When the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.  *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 678-79 (1978).  A "custom or usage" may be demonstrated by a showing of: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials; and (3) injury to the Plaintiffs by acts pursuant to the governmental entity's custom. In evaluating the "custom" of the entity, a court does not restrict its inquiry to the written policy.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 386-87 (1989).  It is the policy applied, not the policy written, that must be scrutinized.  *Id*.

Plaintiff clearly had a constitutional right to be protected and free from the assault and treatment described in the Second Amended Complaint (Doc. 27) and Plaintiff's Brief in Support of her Response to Motion for Summary Judgment (Doc.

10

38).  Plaintiff argues that the negligent hiring, training and supervision of Deputy Fite constituted a custom or policy of the Sheriff's Department which was the moving force behind the violation of Plaintiff's constitutional rights.  Plaintiff cites other decisions made by Sheriff Ball in an effort to demonstrate that Sheriff Ball acted with deliberate indifference in the hiring, training, and supervising of Deputy Fite and the other employees of the Sheriff's Department.  Separate Defendant Sheriff Ball may be held liable under § 1983 if he directly participated in the misconduct or if he failed to properly supervise or train Separate Defendant Deputy Fite.  *See Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996).  The standard is whether Sheriff Ball was deliberately indifferent to or tacitly authorized the improper conduct.  *Id*.

The facts alleged in this case demonstrate that Separate Defendant Sheriff Ball was aware that Deputy Fite made misrepresentations on his employment application, and had been previously arrested and charged with a criminal offense. Moreover, Sheriff Ball hired Deputy Fite after conducting only a minimal background investigation, administering a physical or psychological exam, or checking his employment references. Sheriff Ball then transferred Deputy Fite from a position as a jailer to a patrol deputy after three months of employment. Sheriff Ball instructed Deputy Fite to complete two days of

11

training with a fellow deputy as his only training for this new position.  Sheriff Ball failed to file the proper paperwork, as required, to put the Arkansas Commission on Law Enforcement Standards on notice that Deputy Fite was performing law enforcement actions.  After learning of the misconduct, Sheriff Ball chose to ignore the Sheriff's Department internal affairs investigators' recommendations that Jailer Farr and Corporal Bailey be terminated for their conduct with regard to the incident.

Plaintiff alleges that the incident of June 11, 2003, was a direct result of the negligent hiring, training and supervision of the employees of the Sheriff's Department. Although, there was a policy and procedure manual at the jail, Deputy Fite doesn't recall reading it or being asked to read it. The Defendants have not brought to the Court's attention any additional training given to Deputy Fite before or during his time as a patrol deputy.  This evidence could indicate that Sheriff Ball was deliberately indifferent to the known risk of employing a deputy that misrepresented his criminal history, placing a deputy in a position to act as a law enforcement officer without proper training or certification, and not properly supervising the employees of the Sheriff's Department. Therefore, we find that questions of fact exist which preclude summary judgment, including but not limited to, whether Sheriff

AO72A
(Rev. 8/82)

Ball acted with deliberate indifference in the hiring, training and supervising of Deputy Fite, and whether that indifference resulted in the violation of the Plaintiff's constitutional rights.

Finally, Separate Defendant Sheriff Ball contends that the doctrine of qualified immunity shields him from individual liability for Plaintiff's claims.  A law enforcement officer sued in his individual capacity is entitled to qualified immunity unless he violated a clearly established right of which a reasonable person would have known.  *Harlow v. Fitzgerald,* 457 U.S. 800, 818-19 (1982).  The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.  *Hunter v. Bryant,* 502 U.S. 224, 229 (1991).  We find that the Separate Defendant Sheriff Ball is immune from individual liability under the doctrine of qualified immunity.  The Plaintiff has not alleged that Sheriff Ball had any personal involvement with her arrest, detention, or any of the misconduct of any of the employees at the jail on June 11, 2003, or thereafter.  There is no indication that Sheriff Ball was aware of or attempted to ratify the actions of Deputy Fite.  Sheriff Ball did not attempt to interfere or cover-up the allegations and investigation of misconduct by his employees.  The Plaintiff cites *Parrish v. Luckie,* 963 F.2d 201 (8th Cir. 1992), to

13

demonstrate that Sheriff Ball violated a clearly established law. In *Parrish,* the Court upheld a judgment against the former North Little Rock police chief in his official capacity for criminal acts of rape by a patrolman in the course of his duties as a police officer. In *Parrish,* the police chief was found to have been aware of the allegations made against the police officer and made efforts to cover-up the crime and dissuade the victim from filing a complaint. There was no such conduct by Sheriff Ball in this case. Accordingly, we find that the Separate Defendant Sheriff Ball is immune from individual liability pursuant to the doctrine of qualified immunity.

**D.   Conclusion**

For these reasons, the Defendants' Motion for Summary Judgment (Doc. 31) is **GRANTED** with regard to Separate Defendant Hot Spring County Sheriff's Department, Separate Defendant Hot Spring County, and Separate Defendant Sheriff Ball in his individual capacity, and **DENIED** with regard to Separate Defendant Sheriff Ball in his official capacity. Accordingly, this case will proceed to trial as scheduled on **February 25, 2008,** against Separate Defendants Joseph Fite, individually and in his official capacity, and Sheriff Ron Ball, in his official capacity.

IT IS SO ORDERED this 5th day of February, 2008.

                                    */s/ Robert T. Dawson*
                                   Robert T. Dawson
                                   United States District Judge

14

**AO72A**
**(Rev. 8/82)**

AO72A
(Rev. 8/82)