```
          IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                  HOT SPRINGS DIVISION
```

SUMMER PARRISH                                           PLAINTIFF

    vs.                    CASE NO. 06-6024

JOSEPH FITE, INDIVIDUALLY AND IN
OFFICIAL CAPACITY, AND SHERIFF RON
BALL, IN HIS OFFICIAL CAPACITY                          DEFENDANTS

### MEMORANDUM OPINION AND ORDER

    This matter is before the court following a one-day trial on September 24, 2008. Plaintiff brought this action pursuant to 42 U.S.C § 1983. The Plaintiff accuses Defendant Joseph Fite, a Hot Spring County Sheriff's Deputy, of violating her constitutional rights under color of law by causing her to expose her breasts and groping her while exposed. Parrish also contends former Hot Spring County Sheriff Ron Ball, in his official capacity, is liable for Fite's actions on theories of pattern and practice, failure to train, and the decision to hire Fite. Defendants do not deny what happened to Parrish, but deny that Fite and Ball incurred liability in their official capacities.  The following will constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52.

### A. FINDINGS OF FACT

    During the trial, the following facts were established by a preponderance of the evidence:

1.   Joseph Stephen Fite began his association with the Hot

      Spring County Sheriff's Office when he applied to be a jailer.

2. On his application, Fite misrepresented his termination from his previous employment with the JC Potter Sausage Co. as a lay-off, while the company fired him.

3. Fite's application omitted adult charges for Terroristic Threatening and Criminal Trespass where he allegedly choked his ex-wife and threw her down. Those charges were dropped.

4. Fite truthfully listed a harassment charge he received at the age of fifteen (15) where he was found guilty.

5. There was nothing in Fite's background that indicated a proclivity for sexual assault.

6. Fite worked for some three months as a jailer before he became a Road Deputy.

7. During the time Fite worked as a jailer, there were no incidents, complaints, or problems with his job performance.

8. Deputy Sheriff of Hot Spring County is a position subject to the standards of the Executive Commission on Law Enforcement Standards and Training.

9. The Commission on Law Enforcement Standards and Training requires form F-1 to be filed within ten (10) days of the hiring of a new Law Enforcement Officer.

**AO72A**
**(Rev. 8/82)**

10. No F-1 was ever filed for Fite.

11. Sheriff Ball confused the requirement that a newly hired Law Enforcement Officer attend a Training Academy within one year to mean that Law Enforcement Officers had one year to comply with the minimum standards for hiring Law Enforcement Officers.

12. Fite never had a psychological examination as required under the minimum standards to be hired as a Law Enforcement Officer in Arkansas.

13. Fite complied with the other minimum standards to be a Law Enforcement Officer.

14. The only training that Fite received as a Law Enforcement Officer was one to two days of riding with the Deputy whose job Fite was hired to fill. Fite received a policy manual, but never read it. No evidence was presented that Fite was taught how to comport himself as a Law Enforcement Officer, how to handle detainees and arrestees, or that he ever received any training related to sexual harassment or Title VII.

15. Fite was allowed to operate as an almost wholly unsupervised Road Deputy, subject only to minimal supervision by radio.

16. Although he was fully authorized to act as a Law Enforcement Officer, Fite had no particular training or

       knowledge of the law he was tasked to enforce.

17. Allowing Fite to operate as a Law Enforcement Officer while having minimal, or no training was a deliberate and conscious choice of Sheriff Ball.

18. Fite was scheduled to go through Law Enforcement training in July, the month following the incident with Summer Parrish.

19. Until his last day of work as a Deputy, there were no incidents, complaints, or problems with Fite's job performance as a Road Deputy.

20. Fite resigned his position with the Hot Spring County Sheriff's office to take a job with the Arkansas Department of Corrections. Fite's last day of work as a Deputy was June 11, 2003.

21. Roughly a week before Fite was to leave the Sheriff's Office, the Plaintiff, a J-Mart employee, asked Fite for advice concerning a pending legal matter. After Fite gave her the advice, he asked her on a date. She refused.

22. Parrish's next contact with Fite was Wednesday, June 11, 2003 when he arrested her for outstanding warrants.

23. Parrish's arrest warrants were for failure to pay fines for driving with a suspended license and driving without insurance.

24. Fite transported Parrish to the Hot Spring County

      Courthouse, which also was the location of the jail, in the front seat of his car. During the ride he told her that if she had gone on the date with him, this incident would not have happened.

25. Upon arriving at the Courthouse, Fite placed her in a room with monitoring equipment.

26. Fite told Jason Farr, a jailer, that he would get Parrish to expose herself.

27. Farr was able to hear Fite and Parrish's conversation through a speaker, but could not see them because Parrish was in a location of the room not seen by the video feed. No recordings were made.

28. Fite told her she would be searched for drugs. Parrish questioned the grounds for the search and stated that she thought a female officer would perform the search. Fite told her that he would get to watch.

29. Fite accompanied Parrish in the elevator when she went to the bathroom. While in the elevator, Fite attempted to hug her and told her "it would be OK."

30. Fite made Parrish put on a prison orange shirt for her mug shot. He allowed her to put it on over her clothes.

31. Fite informed Parrish that she owed approximately $800 in fines and warrant fees, but he could reduce that figure if she showed her breasts.

AO72A
(Rev. 8/82)

32. Parrish was particularly vulnerable to sexual abuse by an authority figure because of childhood molestation.

33. When Parrish did not immediately respond, Fite began pressuring her to expose herself.

34. Parrish obeyed Fite's directions and exposed her breasts. Fite then grabbed her breast with his hand.

35. Parrish lowered her shirt and Fite told her he could get the last $100 taken care of if she removed her pants. Parrish refused.

36. Parrish was released and Fite drove her back to the J-Mart.

37. Throughout the entire incident, Fite was on duty and wore a uniform of the Hot Spring County Sheriff's Deputy. Fite acted pursuant to authority delegated to him by the Hot Spring County Sheriff's Office.

38. Although warrant fees were not to be waived without permission of a Judge, payment of all fees was not strictly enforced.

39. That night, Fite boasted about the events to Corporal Brian Bailey, another Deputy at the Hot Spring Sheriff's Office.

40. Neither Farr nor Bailey made any report of the incident.

41. Parrish reported the incident to the Arkansas State Police who commenced the investigation.

AO72A
(Rev. 8/82)

42. Fite pled guilty to Sexual Assault in the Second Degree, which requires sexual contact with another by forcible compulsion. He was sentenced to sixty (60) months probation and placed on the sex offender registry.

43. Fite knew what he did was wrong in a vague, generalized sense.

44. Fite was not aware at the time of the incident that what he did to Parrish was a felony.

45. Had Fite been more familiar with the law, his behavior towards Summer Parrish would have been more appropriate, and he would not have sexually assaulted the Plaintiff.

46. Fite's almost complete lack of training as a Law Enforcement Officer and lack of knowledge of the contents of the law directly caused the incident with the Plaintiff.

47. By not reporting the incident, Bailey and Farr received four (4) days of suspension and ninety (90) days of probation. Bailey was promoted during his probation.

48. In part because of her experience with Fite, Parrish did not work for the next 3-4 months. She had been making roughly $7.25 an hour and working forty (40) hours a week.

49. Parrish suffered mental distress, humiliation, and embarrassment as a result of the unreasonable search.

50.  Parrish's compensatory damages total $30,000.

**B. DISCUSSION**

Section 1983 states that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State...subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights, ...secured by the Constitution and laws, shall be liable to the party injured in an action at law." The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

**1. Official Capacity Liability for Sheriff Ball and Deputy Fite**

For a municipality to be liable under § 1983, the municipality itself must cause the violation at issue. "*Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Section 1983 liability attaches only when execution of the governmental entity's policy or custom causes the injury. *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 694 (1978) Because a municipality can act only through its employees, the municipality in question must be held liable for the acts of its employees executing the policy or custom.

8

"[M]unicipal liability may be imposed for a single decision by municipal policymakers." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). However, for a single incident of unconstitutional activity to impose liability, there must be separate proof of an existing, unconstitutional policy attributable to a municipal policymaker. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). In this case, the liability comes from the acts of Sheriff Ball in his official capacity and Deputy Fite in his official capacity.

### a. General Pattern and Practice

For municipal liability, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] the constitutional violation." *Monell*, 436 U.S. at 694. Three requirements must be met in the Eighth Circuit:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
> (3) The plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., proof that the custom was the moving force behind the constitutional violation.

*Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). The Eighth Circuit has further applied *Monell* to mean that a plaintiff must either show an official policy "or misconduct so pervasive among non-policymaking employees of the

9

municipality 'as to constitute a custom or usage' with the force of law." *Kuha v. City of Minnetonka*, 365 F.3d 590, 603 (8th Cir. 2003) (citing *Monell*, 436 U.S. at 691).

Plaintiff bases her claim of unconstitutional pattern or usage on the prior behavior of Jailer Farr. The Plaintiff claims part of the pattern was Sheriff Ball's ratification of Fite's conduct by not sufficiently punishing Jailer Farr for his actions. Farr's role in the incident was listening on a speaker and not reporting the incident. Farr received a four day suspension and ninety (90) days probation, during which time he received a promotion.

No evidence was presented at trial of any of any prior misconduct by any employee of the Hot Springs County Sheriff's Office. The evidence shows that until his last day of work, there were no complaints about Fite's work as a jailer or as a Deputy.

### b. Failure to Train

A county or municipality may also incur § 1983 liability if a failure to train its law enforcement officers causes a constitutional violation. A municipal custom or policy may be inferred indirectly from acquiescence in a custom or policy. *See Jett v. Dallas Indepen. Sch. Dist.*, 491 U.S. 701, 737 (1989). Indirect inference of a custom or policy may come from a "failure by policymakers to train their subordinates

10

amounting to 'deliberate indifference to the rights of those who come in contact with the municipal employees.'" *Davis v. Lynbrook Police Dept.*, 224 F.Supp. 2d 463, 478 (E.D.N.Y. 2002). "If a municipality fails to train its police force, or if it does so in a grossly negligent manner so that it inevitably results in police misconduct, the municipality may fairly be said to have authorized the violations." *Warren v. City of Lincoln, Neb.*, 816 F.2d 1254, 1263 (8th Cir. 1987).

Three requirements must be met for a municipality to liable for a failure to train.  First, the hiring and training practices must be inadequate. *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996). Second, the municipality must be deliberately indifferent to the rights of others in adopting those training practices, such that the "failure to train reflects a deliberate or conscious choice by a municipality." *Id.* Third, the alleged deficiency in the city's training procedures must actually cause the plaintiff's injury. *Id.*

A footnote in *City of Canton* gives an example of a failure to train results in deliberate indifference to constitutional rights. 489 U.S. at 390. Since police officers are equipped with guns and are required to arrest fleeing felons, the need to train police officers in the constitutional limitations of deadly force is so obvious that

11

not doing so constitutes deliberate indifference to constitutional rights. *Id.* When the municipality has a training program, a single constitutional violation is probably insufficient to trigger § 1983 liability, but it may put decision-makers on notice that the program is inadequate. *See Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 407 (1997).

In this case, Fite received no training in constitutional rights or the law and had not been through a training program. Despite being tasked to enforce the law, Fite received no training as to what the law was. Fite was given a badge, a gun, and a vehicle with no more idea of the laws he was enforcing or the rights he was protecting than he did when he worked for the sausage company. The Court finds Sheriff Ball's decision to place a Deputy on duty with no meaningful training is both shocking and alarming. The need to train Deputies in the basics of the law is so obvious that not doing so constitutes deliberate indifference to constitutional rights.

The need to specifically train Sheriff's Deputies not to sexually assault the recently arrested is not immediately obvious. Indeed, Fite said that he knew what he did was wrong. However, the Court has been presented no evidence that suggests that working as a Sheriff's Deputy was anything other than another job for Fite. Fite worked as a jailer for some

12

three months and about the same time as a Deputy, which reflects that he was less experienced in criminal justice than in his previous work of building cabinets, loading trucks, or selling sausage. If during Fite's time as a sausage salesman, he convinced a woman to expose herself and then touched her, that would not be a constitutional violation. Fite said he was not aware at the time that what he did was a felony. After hearing Fite's testimony, the Court is convinced that if Fite had received training in dealing with arrestees, constitutional rights, and the law in general, he would not have sexually assaulted the Plaintiff. Accordingly, the Court can only conclude that the failure to train Deputy Fite caused the deprivation of Parrish's constitutional rights.

### c. Liability from Hiring Practices

Inadequate hiring practices may also be a source of § 1983 liability. "To prevent municipal liablity for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Bd. of County Comm'rs*, 520 U.S. at 410. To trigger municipal liability under § 1983, the hiring official must consciously disregard an obvious risk. *Id.* at 411. Merely showing inadequate screening is insufficient to establish liability. *See Id*. The indifference that must be shown is not

13

indifference to the applicant's background, it is indifference to the risk that a particular right will be violated following the decision. *Id.* It must be shown that "*this* officer was highly likely to inflict this *particular* injury on the defendant." *Id.* at 412 (emphasis in original).

In this case, Fite's background contained two items of note. The first is the charges of terroristic threatening and criminal trespass relating to the incident with his ex-wife. Those charges were dismissed. The second item is the harassment charge to which Fite pled guilty as a juvenile.

The Plaintiff contends that poor hiring practices by the Sheriff's Office caused Fite's sexual assault on the Plaintiff. For Sheriff Ball's conduct to rise to the level of deliberate indifference, Fite's background at the time of his firing must have shown a particular likelihood that he would commit a sexual assault. Fite's background incidents suggest, if anything, a problem with anger management, not a proclivity for sexual assault. The Court has no evidence as to what the required psychological exam would have shown had it been performed. Although the application process was inadequate, the Court cannot say that Fite's hiring constituted deliberate indifference on the part of Sheriff Ball.

### **2. Liability of Joseph Fite in His Individual Capacity**

Law Enforcement Officers have qualified immunity from

liability in their individual capacity unless they violate a clearly established right of which a reasonable person would know. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Punitive damages are available for a government official sued in his individual capacity. *See City of Newport v. Fact Concepts, Inc.*, 453 U.S. 247, 267 (1981).

In this case, Fite falls into the category of "plainly incompetent." Had Fite had any training in the law, he would clearly have known that his actions not only violated the constitution, but also were felonious. A reasonable person would know that Law Enforcement Officers could not force an arrestee to disrobe and sexually assault her. The reasonable expectation of privacy of the person is a clearly established right that Fite heinously violated. Fite does not have qualified immunity for his violation of Parrish's constitutional rights, and therefore is liable for his violation of Summer Parrish's constitutional rights under color of law.

**C. CONCLUSIONS OF LAW**

1. At all times, Fite was acting under color of law during the incident in question.

2. Fite's actions violated Summer Parrish's constitutional

15

       rights, including the rights to privacy and freedom from unreasonable search and seizure.

3. Fite is not entitled to qualified immunity since he violated a clearly established right of which a reasonable person would have known.

4. The Hot Spring County Sheriff's Office did not show a continuing, widespread, persistent pattern of unconstitutional misconduct through the acts of its employees.

5. Fite's hiring did not amount to deliberate indifference to the risk of a particular constitutional violation.

6. The Hot Spring County Sheriff Office's training procedures were grossly inadequate and nonexistent.

7. The decision to allow Fite to act as a Road Deputy with virtually no training or supervision constitutes deliberate indifference to the rights of others.

8. Failure to supply meaningful training in the law or professional responsibility to a Law Enforcement Officer can only mean that misconduct was inevitable and the danger was obvious.

9. The failure to supply any meaningful training to Fite caused the deprivation of Parrish's constitutional rights.

10. Fite is liable to Summer Parrish in his individual

16

      capacity for $15,000 of compensatory damages and $100,000 of punitive damages.

11. Fite and Ball are liable in their official capacities for the remaining $15,000 of compensatory damages.
12. The Defendants are Jointly and Severally Liable for Plaintiff's court costs and attorney's fees.

**D. ORDER**

Based upon the foregoing, the Court concludes that Plaintiff has proven a violation of her constitutional rights under color of law by Joseph Stephen Fite in his individual and official capacities and Sheriff Ron Ball in his official capacity. Accordingly, Judgment is for the Plaintiff for $30,000 of compensatory damages and $100,000 of punitive damages. The Court apportions $15,000 of the compensatory damages to Defendants Ball and Fite in their official capacities. The Court apportions the remaining $15,000 of compensatory damages to Defendant Fite in his individual capacity. Defendant Fite, in his individual capacity, is liable for the entire $100,000 of punitive damages. Plaintiff's costs and attorney's fees are to be born Jointly and Severally by all Defendants.

IT IS SO ORDERED this 7th day of October 2008.

                          /s/ Robert T. Dawson
                          Robert T. Dawson
                          United States District Judge

AO72A
(Rev. 8/82)